Peter W. Billings, A0330
Jason W. Hardin, A8793
Timothy K. Clark, A10778
FABIAN & CLENDENIN,
 A Professional Corporation
Mailing Address:
 P.O.  Box 510210
 Salt Lake City, Utah 84151-0210
Physical Address:
 215 South State Street, 12th Floor
 Salt Lake City, Utah 84111
Telephone:     (801) 531-8900
Facsimile:     (801) 596-2814
E-mail:        pbillings@fabianlaw.com
               jhardin@fabianlaw.com
               tclark@fabianlaw.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MONITRONICS INTERNATIONAL, INC., a Texas corporation; MONITRONICS FUNDING, LP, a Delaware limited partnership; and MONITRONICS SECURITY, LP, a Delaware limited partnership; | ) ) ) ) ) ) )     Case No. 2:07-cv-00575-DB |
| Plaintiffs, | ) **COMPLAINT** |
| vs. | ) ) ) |
| PINNACLE SECURITY, LLC., a Utah limited liability company; CHAD CHRISTOFFERSON, an individual; MOSES HAWKINS, an individual; ALLSYSTEMS SECURITY PROFESSIONALS, INC. d/b/a SAFEHOME SECURITY SYSTEMS, a Utah corporation; ALARMEX SECURITY, INC., a Utah corporation, and its successor in interest, VIGILON SECURITY, INC., a Utah corporation**;** and JOHN DOES 1-20; | ) ) ) ) ) ) ) ) ) ) ) )     Honorable Dee Benson |
| Defendants. | ) ) |

Plaintiffs Monitronics International, Inc., Monitronics Funding, LP and Monitronics Security, LP complain and allege as follows:

### PARTIES, JURISDICTION AND VENUE

1.       Plaintiff Monitronics International, Inc. is a Texas corporation with its principal place of business in Dallas, Texas.

2.       Plaintiff Monitronics Funding, LP is a Delaware limited partnership with its principal place of business in Dallas, Texas.

3.       Plaintiff Monitronics Security, LP is a Delaware limited partnership with its principal place of business in Dallas, Texas.

4.       On or about August 7, 2007, Monitronics International, Inc. caused to be transferred to Monitronics Funding, LP certain of Monitronics International, Inc.'s assets, including, but not limited to, all of the **Dealer AMPA's** (as defined *infra*), all of the **Customer AMA's** (as defined *infra*) and **Monitronics' Marks** (as defined *infra*).  On or about August 7, 2007, Monitronics International, Inc. caused certain other of its operating assets to be transferred to Monitronics Security, LP.  Monitronics International, Inc., Monitronics Funding, LP and Monitronics Security, LP are collectively referred to herein as "**Monitronics.**"

5.       Defendant Pinnacle Security, LLC. ("**Pinnacle**") is a Utah limited liability company with its principal place of business in Utah County, Utah.

6.       Defendant AllSystems Security Professionals Incorporated d/b/a SafeHome Security Systems ("**AllSystems**") was a Utah corporation with its principal place of business in Utah County, Utah; it is now expired.

7.      Defendant Alarmex Security, Inc. ("**Alarmex**") was a Utah corporation with its principal place of business in Utah County, Utah; it is now expired.

8.      Defendant Vigilon Security, Inc. ("**Vigilon**") is a Utah corporation and has its principal place of business in Utah County, Utah.

9.      Vigilon is the successor in interest to Alarmex; Alarmex changed its corporate name to Vigilon in 2004.  Alarmex and Vigilon may be jointly referred to hereafter as "**Alarmex / Vigilon**."

10.     Defendant Chad Christofferson ("**Christofferson**") is an individual who resides in Utah County, Utah.  Christofferson is a manager of Pinnacle.  Christofferson was a director and shareholder of both AllSystems and Alarmex.  Upon information and belief, Christofferson owns interests in Vigilon and Pinnacle.

11.     Defendant Moses Hawkins ("**Hawkins**") is an individual who is a Pinnacle salesperson and who, on information and belief, resides in Sanpete County, Utah.

12.     Subject matter jurisdiction is proper with this Court pursuant to 28 U.S.C. §§ 1331, 1332 and 1338.

13.     All of the Defendants are subject to the personal jurisdiction of this Court.

14.     Venue is proper in the United States District Court, District of Utah pursuant to 28 U.S.C.  § 1391.

## THE INDUSTRY

15.     Monitronics is the nation's fourth-largest alarm monitoring service provider, providing service to over 500,000 residential and business customers throughout the U.S. (the "**Customers**").  This involves the monitoring of signals from the homes and businesses of

3

Monitronics' customers, which may arise from burglaries, fires and other events.  The alarm

monitoring is done at the company's central monitoring station in Dallas, Texas.

16.     Within the security monitoring industry, independent dealers solicit customers for

alarm monitoring service through a variety of methods, including door-to-door and

telemarketing.

17.     Where the dealers' salespersons are successful in signing up customers, the dealer

typically enters two contracts with the customer, one for the sale and installation of the alarm

monitoring equipment (the **"Installation Agreement"**), and a second agreement related solely to

the monitoring of the customer's premise (the **"Customer AMA"**).

18.     The typical Customer AMA provides for the monitoring of that customer's

premises for a stated term, usually three years, with automatic one year renewals thereafter.  The

average lifespan of a Customer AMA held, owned and serviced by Monitronics is for a period of

eight to ten years.

19.     The independent dealers usually offer the Customer AMA's to alarm monitoring

companies, such as Monitronics, to purchase.  Monitronics obtains most of its customers from

such independent dealers in accordance with Alarm Monitoring Purchase Agreements (**"Dealer**

**AMPA"**) between each of those dealers and Monitronics.  The Dealer AMPA's give

Monitronics the right of first refusal to purchase Customer AMA's.

20.     Before it purchases a Customer AMA, Monitronics does due diligence on the

customer.  As part of the due diligence, Monitronics asks if the potential customer is currently

under contract with another alarm monitoring service.  If Monitronics learns that the potential

customer is under contract with a competitor, Monitronics does not acquire the Customer AMA from the independent dealer.

21.     When Monitronics acquires a Customer AMA, Monitronics generally does not realize profit on Customer AMA's unless a customer extends the alarm monitoring service beyond the initial three year term.  As described above, the average customer contracts with Monitronics is for 8 to 10 years.

22.     The independent dealers recognize and understand that Monitronics will likely service the Customer AMA's for a period far in excess of the initial three year terms.  The Dealer AMPA's expressly state that this is a *fundamental expectation* of Monitronics. Accordingly, the Dealer AMPA's uniformly contain express non-solicitation provisions to protect Monitronics' reasonable expectations in the period following the completion of the initial three year term.

23.     When Monitronics receives a customer cancellation notice, Monitronics employees attempt to contact customers to determine the reason for the cancellation and to try to retain them as customers.  However, once a customer has cancelled, it is difficult for Monitronics to persuade them to return to Monitronics.  Of the total number of customers that cancel their alarm monitoring service, Monitronics employees are typically able to contact and interview around 30%.  Of those 30% actually contacted, Monitronics is able to persuade 10% to 15% to stay with Monitronics.

### THE RELATIONSHIP OF THE PARTIES

24.     AllSystems became an Authorized Dealer of Monitronics by execution of a Dealer AMPA dated January 19, 2000 (the "**AllSystems Dealer AMPA**").

25.     Alarmex (and later Vigilon) became an Authorized Dealer of Monitronics by execution of a Dealer AMPA dated May 30, 2003 (the "**Alarmex Dealer AMPA**").

26.     When the AllSystems Dealer AMPA and the Alarmex Dealer AMPA were in effect, Monitronics purchased a substantial number of Customer AMA's from each of AllSystems and Alarmex / Vigilon.

27.     As a principal of both AllSystems and Alarmex, Christofferson was intimately familiar with both the AllSystems Dealer AMPA and the Alarmex Dealer AMPA; Christofferson had complete access to the information about the Customer AMA's purchased by Monitronics from AllSystems and Alarmex.

28.     Because of the level of personal involvement, non-solicitation and non-compete obligations were imposed personally on Christofferson.  On January 19, 2000 and, again, on May 30, 2003, Christofferson, in conjunction with the respective AllSystems and Alarmex Dealer AMPAs, entered into and executed an Individual Non-solicitation / Non-compete Agreement with Monitronics (the "**First and Second Christofferson Non-solicitation Agreements**").

29.     Both the AllSystems Dealer AMPA and the Alarmex Dealer AMPA are no longer in effect and neither company is currently an Authorized Dealer of Monitronics. Notwithstanding, certain provisions of each Agreement, including without limitation important and highly-relevant non-solicitation provisions, survive the termination and/or expiration of the Agreements.

30.     Christofferson was substantially involved in the creation of Pinnacle and continues to be a principal in it today.  Pinnacle is not, and never has been, an Authorized Dealer

of Monitronics.  Instead, it sells Customer AMA's to other alarm monitoring service providers.
One of the primary providers that deals with Pinnacle is Security Associates International, Inc.
("**SAI**").

## DISCOVERY OF A PROBLEM

31.     Early this summer, a significant and unusual number of customers began
canceling their monitoring service contracts.  The rate of attrition was unusually high in many
different geographic areas, such as Detroit, Michigan; Gary, Indiana; Chicago, Illinois;
Minneapolis/St. Paul, Minnesota; Kansas City, Missouri; and Denver, Colorado.  In some of
those areas, Monitronics lost two (2) to five (5) times the number of accounts in May–June of
this year as compared to those that Monitronics lost in May–June of last year.

32.     As a result of numerous Monitronics' customers reporting misrepresentations by
salespersons earlier this year, Monitronics created a form for its employees to use in customer
interviews with those terminating customers—the "Summer Attrition Postcard–Response Form"
(the **"Attrition Form"**).  In order to memorialize oral conversations with customers,
Monitronics' employees contemporaneously enter the information given by the customers during
the interview into an electronic database (the "**Customer Notes**") and, when a customer was
seeking termination and other suspicious activities were apparent, on the Attrition Forms.

33.     Among other information, the Attrition Forms contain the following information:
what the salesperson told the terminating customer in order to get the customer to change from
Monitronics; what company the salesperson purported to represent; the central monitoring
station; whether the salesperson offered a system upgrade or a new system and what elements
were allegedly added; whether they were happy with Monitronics' monitoring and service;

whether they intended to cancel their service prior to the visit from the salesperson; whether the salesperson cancelled their monitoring service for them; whether the terminating customer thought the information given to them was deceptive; and particularized notes regarding or statements from the customer.

### THE DECEPTIVE AND ILLEGAL ACTS OF PINNACLE AND ITS SALESPERSONS

34.     Review of the Attrition Forms and further Monitronics' investigation into Customer cancellations uncovered a vast scheme by Pinnacle to steal Customers from Monitronics by, among other things, flatly lying to Monitronics' Customers and tricking them into canceling their monitoring services with Monitronics and signing a new monitoring agreement with Pinnacle.

35.     In particular, Pinnacle and its salespersons are stealing, and have stolen, Customers from Monitronics by, among other things:

        a.     Approaching Monitronics' Customers at their homes and:

        (1)     Lying to the Customers by telling them, among other things, that Monitronics "is going out of business," despite this statement being false and despite Pinnacle and its salespersons knowing that this statement is false;

        (2)     Lying to the Customers by telling them, among other things, that "Pinnacle is taking over the monitoring of Monitronics' accounts," despite this statement being false and despite Pinnacle and its salespersons knowing that this statement is false;

(3)     Lying to the Customers by telling them, among other things, that the salespersons are in fact "with Monitronics," despite this statement being false and despite Pinnacle and its salespersons knowing that this statement is false;

(4)     Lying to the Customers by telling them, among other things, that "Pinnacle is acquiring or merging with Monitronics," despite this statement being false and despite Pinnacle and its salespersons knowing that this statement is false;

(5)     Lying to the Customers by telling them, among other things, that the Customer's system and "paperwork" need "upgrading" or "updating," despite this statement being false and despite Pinnacle and its salespersons knowing that this statement is false;

(6)     Lying to the Customers by telling them, among other things, that the Customers' monitoring services are (or were) simply going to end at the expiration of the first three (3) year term of their monitoring agreement with Monitronics and that, as such, they needed to sign a monitoring agreement with Pinnacle, despite these statements being false and despite Pinnacle and its salespersons knowing that these statements were false

(7)     Deceiving the Customers by showing them Monitronics' badges or cards, as well as other sales and marketing materials,  that the salespersons previously acquired while employed with an Authorized Dealer, despite the salespersons no longer being employed by or associated with Monitronics or otherwise being authorized to use the Monitronics' badges or cards and despite

Pinnacle and its salespersons knowing that the salespersons are not employed by or associated with Monitronics or otherwise authorized to use the badges or cards;

(8)     Confusing the Customers with technical jargon and names and alleged relationships between numerous different entities and then having the Customers sign new agreements with Pinnacle and other documents that terminate their relationship with Monitronics;

(9)     Intentionally and deceptively describing the proposed changes to the Customers' alarm systems and monitoring services merely as "updates" or upgrades" without ever disclosing to the Customers that what they are (or were) signing are (or were) new agreements with new companies or that they are (or were) in fact changing alarm monitoring service providers;

(10)    Otherwise intentionally and knowingly conducting themselves in a deceptive manner to trick Customers into thinking or believing that the salespersons are (or were) part of Monitronics or that they are not (or were not) changing their alarm monitoring service provider;

(11)    Otherwise intentionally and knowingly using the name "Monitronics" or "Monitronics International" or "Monitronics International, Inc." to trick Customers into thinking or believing that the salespersons were somehow associated with or employed by Monitronics when in fact they are not (or were not) and when Pinnacle and its salespersons know (and knew) that they had no authorization to use Monitronics' names or marks in any such fashion;

10

(12)     Telling the Customers that they needed to sign cancellation letters to Monitronics to "ensure continuity of service," despite this statement being false and despite Pinnacle and its salespersons knowing this statement to be false;

(13)     Drafting cancellation notices to Monitronics for the Customers and having the Customers sign the notices simultaneously with signing numerous other documents and without a full explanation of the purpose and effect of such a notice;

(14)     Telling the Customers that they needed to sign general cancellation letters "To Whom It May Concern" and then drafting such letters for the Customers and sending them to Monitronics without the Customers' knowledge or authorization; and/or

(15)     Using Monitronics' confidential information that Pinnacle illegally and wrongfully acquired from Christofferson, AllSystems, and/or Alarmex / Vigilon, including, but in no way limited to, Customer names and addresses, the initial three (3) year term end dates for Customer contracts, and Customer pass codes, to make Customers feel at ease with the salespersons and otherwise to make Customers believe that their alarm monitoring relationship was with them as opposed to Monitronics, despite Monitronics having never authorized Pinnacle to use or acquire any such confidential information and despite Pinnacle and its salespersons knowing that they had no such authorization; and/or

b.     On information and belief, forging the signatures of Customers on cancellation notices sent by Pinnacle to Monitronics;

c.      Between May 1, 2007 to July 31, 2007, sending Monitronics numerous Customer cancellation notices via U.S. mail that were drafted on paper bearing Pinnacle's logo;

d.      Between May 1, 2007 to July 31, 2007, sending Monitronics numerous Customer cancellation notices via facsimile or other wire transmission from a facsimile number bearing Pinnacle's name;

e.      Calling Monitronics and deceptively impersonating Customers in order to effectuate cancellations of Customers' accounts;

f.      On information and belief, during Pinnacle's "Super Saturday" training sessions that occurred in March and April 2007 in Orem, Utah and Rexburg, Idaho, during weekly informal training sessions at Pinnacle's offices, and/or during door-to-door training with existing and previously trained Pinnacle salespersons, instructing salespersons to make the aforementioned representations and take the aforementioned actions, providing them guidance on how to target Monitronics' Customers, and giving them confidential information and documents to assist them in the scheme to steal Monitronics' customers, including, but in no way limited to, Customer lists, Customer names and addresses, the initial three (3) year term end dates for Customer contracts, and pass codes, all of which Pinnacle illegally and wrongfully acquired from Christofferson, AllSystems and Alarmex / Vigilon; and/or

g.      Using Monitronics' confidential information that Pinnacle illegally and wrongfully acquired from Christofferson, AllSystems and/or Alarmex / Vigilon to identify Customers to target, despite Monitronics having never authorized Pinnacle to use

or acquire any such confidential information and despite Pinnacle and its salespersons knowing that it had no such authorization.

36.     Many of the Customers that have been subjected to the aforementioned practices by Pinnacle and its salespersons have been elderly and/or disabled.

37.     On June 9, 2007, the Better Business Bureau ("**BBB**") of Spokane, Washington issued a news release stating that callers to the BBB, mostly seniors, stated that they were not comfortable with the sales tactics of sales representatives Pinnacle.

38.     The Customers that have been subjected to the aforementioned practices by Pinnacle and its salespersons reside in at least the following states:  California; Colorado; Illinois; Indiana; Iowa; Kansas; Missouri; Minnesota; Michigan; Ohio; Washington and Wisconsin; and in Puerto Rico.

## HARM TO CONSUMERS

39.     The conduct described above and in the Attrition Forms has disrupted, and will continue to disrupt, the lives, sense of security, and actual security of Monitronics' Customers.

40.     Certain Customers are currently being double-billed for alarm monitoring services: once by Monitronics and once by Pinnacle, SAI or other provider with whom Pinnacle deals.  Some of the Attrition Forms show customers complaining about being doubled-billed, because they were not even informed, and were not aware, that they were being switched to a different alarm monitoring company.

41.     Double-billing has created confusion among Customers as to whether they are required to pay their bill for Monitronics or another company, causing them a great deal of frustration and discontentment.

42.     Failing to pay a bill, even in the event of double-billing, can result in referral to a collections agency, thereby damaging the consumers' credit history.

43.     Many Customers, whose Monitronics' service has been cancelled pursuant to reasonably apparent request to cancel, continue to believe that their alarms are being monitored by Monitronics.  Given the nature of the industry, it is essential for customers to be able contact the alarm monitoring company, in the event of a false alarm or real emergency.  Pinnacle's fraud and deception have disrupted the actual security of these consumers.

## HARM TO MONITRONICS

44.     The above conduct has significantly disrupted and damaged Monitronics business, well in excess of $75,000.00.  Most of the Customers who have switched from Monitronics to another provider are effectively lost forever, and Monitronics will not experience the typical multiple year renewal pattern that it experiences with most of its Customers.

45.     Monetary remedies are insufficient to provide redress against the offending conduct, should it be allowed to continue.  Monitronics' relationship with Customers and Monitronics' goodwill in the community have been irreparably injured and will continue to be injured if the offending conduct is not stopped.

46.     Monitronics does not wish to alienate and/or lose Customers because of a situation created by the fraudulent and deceptive actions of Pinnacle.  Monitronics continues to expend time and resources to attempt to ameliorate these situations and correct the misinformation being propounded by Pinnacle's conduct.

14

## FIRST CAUSE OF ACTION
(Trademark Dilution—against Pinnacle, Hawkins and John Does)

47.    Monitronics incorporates all of the allegations in this Complaint as though fully set forth in this cause of action.

48.    Beginning in or about May 1, 2007, and continuing to date, Monitronics has been doing business in the United States and abroad and has been using in commerce the marks "Monitronics International, Inc.," "Monitronics" and related marks as trade names and trademarks in connection with its alarm monitoring services.

49.    Plaintiffs have acquired trademark and service mark rights to the marks "Monitronics International, Inc.," "Monitronics" and related marks, both at common law from and after said date and further by virtue of registrations with the United States Patent and Trademark Office, including, inter alia, federal Trademark Registration Nos. 2,308,760 and 2,034, 953 respectively.  Hereafter, all of Monitronics' marks are referred to collectively as the "**Monitronics' Marks**."

50.    On December 13, 2002, Monitronics filed with the PTO a Combined Declaration of Use and Incontestability Under §§ 8 & 15 stating, in compliance with 15 U.S.C. § 1065, that the aforementioned "Monitronics" registered mark had been in continuous use for five (5) consecutive years and was, and still is, in use in commerce; that there had been no final decision adverse to Monitronics claim of ownership of that mark for the goods and services described in the registration or to Monitronic's right to register the same or to keep the same on the register; and that there was, and had been, no proceeding involving these rights pending in the Patent and Trademark Office or in any court.

51.     On May 21, 2007, the PTO notified Monitronics that it had renewed the registration of the aforementioned "Monitronics" mark.

52.     On April 16, 2005, Monitronics filed with the PTO a Combined Declaration of Use and Incontestability Under Sections 8 & 15 stating, in compliance with 15 U.S.C. § 1065, that the aforementioned "Monitronics International, Inc." registered mark had been in continuous use for five (5) consecutive years and was, and still is, in use in commerce; that there had been no final decision adverse to Monitronics claim of ownership of that mark for the goods and services described in the registration or to Monitronic's right to register the same or to keep the same on the register; and that there was, and had been, no proceeding involving these rights pending in the Patent and Trademark Office or in any court.

53.     The Monitronics' Marks are fanciful, famous and incontestable.

54.     The Monitronics' Marks are entitled to protection from dilution under the Federal Lanham Act.  15 U.S.C. § 1125(c) (2007).

55.     Monitronics has extensively advertised and promoted the Monitronics' Marks. Moreover, Monitronics has invested substantial time, energy, money and other resources to develop the Monitronics' Marks.  Each of the Monitronics' Marks is inherently arbitrary, fanciful, distinctive or suggestive, or has otherwise acquired secondary meaning in the relevant channels of trade to refer to Monitronics.

56.     From and after May 1, 2007, Defendants has commenced use in commerce of identical or at least confusingly similar to the Monitronics' Marks in connection with the promotion, advertising, offering for sale and sale of alarm systems monitoring products and services or other use in commerce as an indicator of origin of goods.

16

57.     Indeed, Defendants are using the Monitronics' Marks to steal Monitronics' Customers.

58.     Monitronics has never granted Pinnacle or any Pinnacle member or other agent any license, or any other permission, to use the aforementioned "Monitronics" registered mark, the aforementioned "Monitronics International, Inc." registered mark, or the Monitronics or Monitronics International, Inc. names.  In any event, any such license or permission, if any, given to other companies previously associated with Chad Christofferson has expired or been revoked.

59.     The use of the Monitronics' Marks by Defendants, including, but not limited to, in relation to the sale of alarm systems monitoring products and services, tends to dilute, and has in fact diluted, the famous nature of the Monitronics' Marks.

60.     Defendants knowingly used the Monitronics' Marks to deceive Customers into believing it and its salespersons represented Monitronics.

61.     As a proximate result of Defendants' above-described willful conduct, Monitronics has been damaged in an amount to be proven at trial, including, but not limited to, consequential damages and that it is entitled to recover all of Pinnacle's profits from its actions detailed herein as well as all of Monitronics' costs and reasonable attorneys' fees associated with this action.

62.     At all material times, Defendants have acted in bad faith, oppressively and maliciously toward Monitronics and its Customers, with intent to injure Monitronics, thereby entitling Monitronics to treble damages in an amount to be determined at trial, including, but not limited to, damages, lost profits and other consequential damages.

63.     The above described acts of Defendants have caused and are continuing to cause irreparable injury to Monitronics, for which Monitronics has no adequate remedy at law, and Defendants will continue to do so unless enjoined by this Court.

## SECOND CAUSE OF ACTION
(Trademark Infringement—against Pinnacle, Hawkins and John Does)

64.     Monitronics incorporates all of the allegations in this Complaint as though fully set forth in this cause of action.

65.     The Monitronics' Marks are entitled to protection from infringement under the Federal Lanham Act.  15 U.S.C. § 1114(1) (2007).

66.     Defendants have created a likelihood of confusion with the Monitronics' Marks in the relevant marketplace to Monitronics' detriment and damage, thereby constituting infringement of Monitronics' registered and unregistered trademarks and service marks.

67.     As a proximate result of Defendants' above-described willful conduct, Monitronics is informed and believes and based thereon alleges that it has been damaged in an amount to be proven at trial, including, but not limited to, consequential damages and that it is entitled to recover all of Pinnacle's profits from its actions detailed herein as well as all of Monitronics' costs and reasonable attorneys' fees associated with this action.

68.     At all material times, Defendants have acted in bad faith, oppressively and maliciously toward Monitronics and its Customers, with intent to injure Monitronics, thereby entitling Monitronics to treble damages in an amount to be determined at trial, including, but not limited to, damages, lost profits and other consequential damages.

69.     The above described acts of Defendants have caused and are continuing to cause irreparable injury to Monitronics, for which Monitronics has no adequate remedy at law, and Defendants will continue to do so unless enjoined by this Court.

### THIRD CAUSE OF ACTION
(Federal Unfair Competition—against Pinnacle, Hawkins and John Does)

70.     Monitronics incorporates all of the allegations in this Complaint as though fully set forth in this cause of action.

71.     The actions by Defendants detailed herein constitute unfair competition, in violation of the Federal Lanham Act.  15 U.S.C. §1125(a).

72.     As a proximate result of Defendants' above-described willful conduct, Monitronics has been damaged in an amount to be proven at trial, including, but not limited to, consequential damages and that it is entitled to recover all of Pinnacle's profits from its actions detailed herein as well as all of Monitronics' costs and reasonable attorneys' fees associated with this action.

73.     At all material times, Defendants have acted in bad faith, oppressively and maliciously toward Monitronics, with intent to injure Monitronics, thereby entitling Monitronics to treble damages against Defendants in an amount to be determined at trial.

74.     The above described acts of Defendants have caused and are continuing to cause irreparable injury to Monitronics, for which Monitronics has no adequate remedy at law, and Defendants will continue to do so unless enjoined by this Court.

## FOURTH CAUSE OF ACTION
### (Federal Trade Libel—against Pinnacle, Hawkins and John Does)

75.     Monitronics incorporates all of the allegations in this Complaint as though fully set forth in this cause of action.

76.     The actions by Defendants detailed herein constitute trade libel (false advertising), in violation of the Federal Lanham Act.  15 U.S.C. §1125(a).

77.     Defendants have made numerous material false or misleading representations of fact in conjunction with their efforts to steal Customers, including without limitation those described at length above.

78.     Defendants' use has been and continues to be in the course of business and is commercial in nature.

79.     Defendants have created a likelihood of confusion with the Monitronics' Marks in the relevant marketplace as to the origin, association and/or approval of the Monitronics' badges and I.D. cards and the characteristics of the services offered by Pinnacle.

80.     As a proximate result of Defendants' above-described willful conduct, Monitronics has been damaged in an amount to be proven at trial, including, but not limited to, consequential damages and that it is entitled to recover all of Pinnacle's profits from its actions detailed herein as well as all of Monitronics' costs and reasonable attorneys' fees associated with this action.

81.     At all material times, Defendants have acted in bad faith, oppressively and maliciously toward Monitronics, with intent to injure Monitronics, thereby entitling Monitronics to treble damages against Defendants in an amount to be determined at trial.

82.     The above described acts of Defendants have caused and are continuing to cause irreparable injury to Monitronics, for which Monitronics has no adequate remedy at law, and Defendants will continue to do so unless enjoined by this Court.

### FIFTH CAUSE OF ACTION
(Tortious Interference with Existing and Prospective Economic Relations—against all Defendants)

83.     Monitronics incorporates all of the allegations in this Complaint as though fully set forth in this cause of action.

84.     Defendants intentionally interfered with Monitronics' existing economic relations, by intentionally, knowingly, and willfully inducing Customers to breach and/or terminate Customer AMA's.

85.     Defendants intentionally interfered with Monitronics' existing economic relations for an improper purpose and using improper means, such as the fraudulent and deceptive practices, described at length above.

86.     Defendants intentional interference with Monitronics' existing economic relations causes direct injury to Monitronics in actual lost revenue on the Customer AMA's which have been cancelled and/or breached, in time and expense in investigating the cancellations, in time and expense in attempting to salvage customer relationships damaged by Defendants' interference, and in lost future revenue on Customer AMA's which have been cancelled.

87.     As a proximate result of Defendants' above-described willful conduct, Monitronics is informed and believes and based thereon alleges that it has been damaged in an amount to be proven at trial, including, but not limited to, consequential damages and that it is

entitled to recover all of Defendants' profits from its actions detailed herein as well as all of Monitronics' costs and reasonable attorneys' fees associated with this action.

88.     At all material times, Defendants have acted in bad faith, oppressively and maliciously toward Monitronics and its Customers, with intent to injure Monitronics, thereby entitling Monitronics to punitive damages against Defendants in an amount to be determined at trial.

89.     The above described acts of Defendants have caused and are continuing to cause irreparable injury to Monitronics, for which Monitronics has no adequate remedy at law, and Defendants will continue to do so unless enjoined by this Court.

### SIXTH CAUSE OF ACTION
(State Unfair Competition—against Pinnacle, Hawkins and John Does)

90.     Monitronics incorporates all of the allegations in this Complaint as though fully set forth in this cause of action.

91.     Defendant's actions are a violation of various state deceptive practices laws designed to protect consumers from confusion, including without limitation California's statutory prohibition of false advertising, Business and Professions Code § 17500; the Colorado Consumer Protection Act, COLO. REV. STAT. §6-1-101 *et seq*.; the Illinois Uniform Deceptive Trade Practices Act, 815 ILL. COMP. STAT. 505/1 *et seq.*; the Michigan Consumer Protection Act, MICH. COMP. LAWS § 445.901 *et seq.*; Minnesota's Deceptive Trade Practices Act, MINN. STAT. § 325D.43 *et seq.*; Utah's Unfair Competition Act, Utah Code Ann. § 13-5a-1 *et seq*.

92.     Defendants intentionally, willfully and knowingly continue to infringe the Monitronics' trademark and trade name rights associated with the Monitronics' Marks.

93.     Defendants' use has been and continues to be in the course of business and is commercial in nature.

94.     Defendants' use is an unlawful violation of various state and federal laws, as alleged herein.  Defendants' use is unfair, as Defendants have gained a competitive advantage by misleading and confusing Customers and other consumers.  Defendants' use is fraudulent, as Defendants have gained such advantage by presenting false and deceptive information to Customers and other consumers.

95.     Defendants' use is an infringement of Monitronics' trademark and trade name rights associated with the Monitronics' Marks.

96.     Defendants' actions have materially damaged, and are materially damaging, Monitronics' intellectual property.

97.     Monitronics is entitled to actual damages, costs and attorneys fees, and punitive damages, as a result of the Defendants' failure to discontinue infringement of the Monitronics' trademark and trade name rights associated with the Monitronics' Marks.

98.     The above described acts of Defendants have caused and are continuing to cause irreparable injury to Monitronics, for which Monitronics has no adequate remedy at law, and Defendants will continue to do so unless enjoined by this Court.

## **SEVENTH CAUSE OF ACTION**
(State Consumer Protection—against Pinnacle, Hawkins and John Does)

99.     Monitronics incorporates all of the allegations in this Complaint as though fully set forth in this cause of action.

100.     Defendants' actions are a violation of various state consumer fraud protection laws designed to protect consumers from fraud and deceptive practices, including without limitation California's statutory prohibition of unfair competition, Business and Professions Code, § 17200; the Colorado Consumer Protection Act, COLO. REV. STAT. §6-1-101 *et seq.*; the Illinois Consumer Fraud Act, 815 ILL. COMP. STAT. 505/1 *et seq.*; the Michigan Consumer Protection Act, MICH. COMP. LAWS § 445.901 *et seq.*; Minnesota's prohibition against false advertising , MINN. STAT. § 325F.67; Minnesota's law for the prevention of consumer fraud, MINN. STAT. § 325F.69 and MINN. STAT.  § 325F.71 (imposing additional penalties for consumer fraud against the elderly); and Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1 *et seq.*

101.     Defendants' fraudulent and misleading oral representations to consumers, including without limitation those described at length above, are deceptive acts prohibited by laws protecting consumers in the various states.

102.     Defendants have intentionally, willfully and knowingly committee such deceptive acts.

103.     Defendants' deceptive acts are unconscionable and damage the public good.

104.     Defendants' use is unlawful, as a violation of various state and federal laws, as alleged herein.

105.     Defendants' use is unfair, because it is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers.

106.     Defendants' use is fraudulent, as Defendants have presented false and misleading information to Customers and other consumers, which is likely to deceive.

107.    Defendants' actions have damaged, and are damaging, Monitronics' existing and prospective business relations with Customers.

108.    Monitronics is entitled to actual damages, in an amount no less than $75,000, to be determined at trial, and costs and attorneys fees.

109.    The above described acts of Defendants have caused and are continuing to cause irreparable injury to Monitronics, for which Monitronics has no adequate remedy at law, and Defendants will continue to do so unless enjoined by this Court.

## EIGHTH CAUSE OF ACTION
(State Trade Secrets Acts—all Defendants)

110.    Monitronics incorporates all of the allegations in this Complaint as though fully set forth in this cause of action.

111.    Certain proprietary information of Monitronics, including without limitation customer lists, expiration dates, pricing information, system requirements, and pass codes, constitute trade secrets (the "Monitronics' Trade Secrets") protected by various state laws, including without limitation the Uniform Trade Secrets Act, California Civil Code § 3426 et seq.; the Colorado Uniform Trade Secrets Act, COLO. REV. STAT. §7-74-101 et seq.; the Michigan Uniform Trade Secrets Act, MICH. COMP. LAWS § 445.1901 et seq.; the Minnesota Uniform Trade Secrets Act, MINN. STAT. § 325C.01 et seq.; and the Utah Uniform Trade Secrets Act, Utah Code Ann. § 13-24-1 et seq.

112.    Monitronics' Trade Secrets are not generally known or ascertainable by its competitors, and Monitronics derives independent economic value from the fact that Monitronics' Trade Secrets are not generally known or ascertainable by its competitors

113.    Monitronics protects the secrecy of the Monitronics' Trade Secrets through a system of contractual terms designed to prevent unauthorized use of and/or access to the Monitronics' Trade Secrets.

114.    Monitronics communicated and shared the Monitronics' Trade Secrets with Defendants Christofferson, Alarmex, and AllSystems under express agreements limiting its use, and Defendants have used the Monitronics' Trade Secrets in violation of the same, to the injury of Monitronics.

115.    Defendants Pinnacle and John Does acquired the Monitronics' Trade Secrets by wrongful manner, having known of the obligations of other Defendants to maintain the secrecy of the Monitronics' Trade Secrets and to refrain from using the same, to the injury of Monitronics.

116.    As a proximate result of Defendants' above-described willful conduct, Monitronics has been damaged in an amount no less than $75,000, to be proven at trial, including, but not limited to, consequential damages.

117.    Because Defendants' misappropriation of the Monitronics' Trade Secrets has been willful and malicious, Monitronics is entitled to reasonable attorneys fees and double damages in an amount to be determined at trial, including, but not limited to, damages, lost profits and other consequential damages.

118.    The above described acts of Defendants have caused and are continuing to cause irreparable injury to Monitronics, for which Monitronics has no adequate remedy at law, and Defendants will continue to do so unless enjoined by this Court.

## NINTH CAUSE OF ACTION
(Conversion—against Pinnacle, Hawkins and John Does)

119.    Monitronics incorporates all of the allegations in this Complaint as though fully set forth in this cause of action.

120.    Pinnacle has wrongfully converted to its own use certain Monitronics' badges and I.D. cards and physical copies of the various Customer AMAs.

121.    Monitronics has been, at all times, entitled to immediate possession of its property.

122.    Pinnacle's exercise of dominion or control over Monitronics' property is intentional and willful;

123.    Pinnacle's exercise of dominion or control over Monitronics' property is without right or justification;

124.    Pinnacle has deprived Monitronics of the exclusive use, possession, benefit, control, and value of its property.

125.    Due to Pinnacle's conversion of the property, Monitronics is entitled to a return of the property or damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
(Defamation—against Pinnacle, Hawkins and John Does)

126.    Monitronics incorporates all of the allegations in this Complaint as though fully set forth in this cause of action.

127.    Defendants published statements concerning Monitronics that were false, including without limitation that Monitronics was going out of business or had gone out of

business, that Monitronics was a related or affiliated entity of Defendants, that Monitronics was

merging with one of the Defendant entities, and that Defendants were agents of Monitronics.

128.    Defendants' false statements are defamatory and not subject to any privilege.

129.    Defendants' false statements were published with the unlawful objective to harm

Monitronics and profit by stealing Customers.

130.    Publication of Defendants' false statements resulted in damage to Monitronics, in

an amount no less than $75,000, to be determined at trial.

## ELEVENTH CAUSE OF ACTION
(False Pretenses / Deceit—against Pinnacle, Hawkins and John Does)

131.    Monitronics incorporates all of the allegations in this Complaint as though fully

set forth in this cause of action.

132.    Defendants have made false representations of fact to Monitronics, in fraudulently

representing themselves as customers of Monitronics and requesting to cancel a Customer AMA.

133.    Defendants knew, at all times, that the representations of fact were false.

134.    Defendants made the false representations of fact concerning Monitronics for the

sole purpose of inducing Monitronics to cancel Customer AMA's, so that Defendants could

solicit, using the deceptive and fraudulent methods described herein, Customers away from

Monitronics.

135.    Because of seemingly straightforward nature of the requests to cancel and

Defendants' knowledge of Monitronics' business methods, Monitronics' reliance on the

Defendants' false representations was justifiable.

136.    Defendants' false statements, made directly to Monitronics, resulted in damage to Monitronics, including without limitation lost past, present and future revenue on cancelled Customer AMA's, in an amount no less than $75,000, to be determined at trial.

### TWELFTH CAUSE OF ACTION
(Fraud / Negligent Misrepresentation—against Pinnacle, Hawkins, and John Does)

137.    Monitronics incorporates all of the allegations in this Complaint as though fully set forth in this cause of action.

138.    Defendants have made representations concerning a presently existing material fact, on multiple independent occasions, each time that the Defendant was, in fact, a specific Customer and that the specific Customer desired to cancel service with Monitronics.

139.    Such representations about the identity of Defendant were and are false, and Defendants knew, at all times, that they were false.

140.    Such representations about the desire to cancel were and are false, and Defendants knew, at all times, that they were false, or Defendants made them recklessly, knowing that they had insufficient knowledge upon which to base such representations.

141.    Defendants made the false representations of fact for the sole purpose of inducing Monitronics to cancel Customer AMA's, so that Defendants could solicit, using the deceptive and fraudulent methods described herein, Customers away from Monitronics.

142.    Monitronics was, at all times, unaware of the falsity of such representations, and it did act reasonably in relying thereon because of seemingly straightforward nature of the requests to cancel and Defendants' knowledge of Monitronics' business methods.

143.     Monitronics did, in fact, rely on such representations and was induced to cancel actual Customer AMA's because of the false representation.

144.      Defendants' fraud resulted in damage to Monitronics, including without limitation lost past, present and future revenue on cancelled Customer AMA's, in an amount to be determined at trial.

145.     As a proximate result of Defendants' above-described willful conduct, Monitronics is informed and believes and based thereon alleges that it has been damaged in an amount no less than $75,000, to be proven at trial, including, but not limited to, consequential damages and that it is entitled to recover all of Defendants' profits from its actions detailed herein as well as all of Monitronics' costs and reasonable attorneys' fees associated with this action.

146.     At all material times, Defendants have acted in bad faith, oppressively and maliciously toward Monitronics and its Customers, with intent to injure Monitronics, thereby entitling Monitronics to punitive damages against Defendants in an amount to be determined at trial.

147.     The above described acts of Defendants have caused and are continuing to cause irreparable injury to Monitronics, for which Monitronics has no adequate remedy at law, and Defendants will continue to do so unless enjoined by this Court.

### THIRTEENTH CAUSE OF ACTION
(Breach of Contract—against All Defendants)

148.     Monitronics incorporates all of the allegations in this Complaint as though fully set forth in this cause of action.

149.     Each of the AllSystems Dealer AMPA, Alarmex Dealer AMPA, and the First and Second Christofferson Nonsolicitation Agreements (collectively, the "**Agreements**") contain substantially similar express provisions that expressly state:  (1) that one of the fundamental expectations of Monitronics in acquiring the Customer contracts is that such contracts will be voluntarily renewed by Customers after expiration of the mandatory term; (2) that, accordingly, each of AllSystems, Alarmex, and Christofferson promises to Monitronics that it (or he) shall not, at any time within fifteen (15) years, directly or indirectly, in any capacity, contact, solicit or otherwise attempt to solicit or accept unsolicited monitoring or alarm installation business from the Customer to whom any such contract related; (3) that each of AllSystems, Alarmex, and Christofferson agrees not to sell or convey any customer lists or other information of Monitronics or otherwise related to the various Customer contracts; and (5) that these nonsolicitation provisions survive the termination and expiration of the Agreements.

150.     In addition, the First and Second Christofferson Nonsolicitation Agreements extend those nonsolicitation provisions and requirements not only to Christofferson individually, but also to Christofferson on behalf of any other person or entity as an employee, officer, director, partner, agent, consultant, shareholder, member, owner or otherwise.

151.     Under the terms of the respective Agreements, Monitronics shared certain propriety information about itself and its Customers ("Monitronics' Confidential Information") with each of AllSystems, Alarmex / Vigilon, and Christofferson.

152.     Monitronics has fully performed all of its obligations under the Agreements and has otherwise abided by the terms of each and every Agreement, regardless of whether or not it had to do so.

153.    Each of AllSystems, Alarmex / Vigilon, and Christofferson have materially breached their respective Agreement(s) with Monitronics by sharing Monitronics' Confidential Information with unauthorized parties and using this information to solicit certain Customers in derogation of their express obligations under the respective Agreements.

154.    As a proximate result of Defendants' above-described willful conduct, Monitronics is informed and believes and based thereon alleges that it has been damaged in an amount no less than $75,000, to be proven at trial, including, but not limited to, consequential damages and all of Monitronics' costs and reasonable attorneys' fees associated with this action.

155.    The above described acts of Defendants have caused and are continuing to cause irreparable injury to Monitronics, for which Monitronics has no adequate remedy at law, and Defendants will continue to do so unless enjoined by this Court.

### FOURTEENTH CAUSE OF ACTION
(Breach of Duty of Good Faith and Fair Dealing—against All Defendants)

156.    Monitronics incorporates all of the allegations in this Complaint as though fully set forth in this cause of action.

157.    Each of the Agreements contain an implied covenant of good faith and fair dealing, pursuant to which each of AllSystems, Alarmex / Vigilon, and Christofferson agreed not to use bad faith or to willfully prevent Monitronics from enjoying the benefits of the Agreement.

158.    Contrary to its obligations imposed by the implied covenant of good faith and fair dealing, each of AllSystems, Alarmex / Vigilon, and Christofferson willfully prevented Monitronics from enjoying the benefits of the Agreements in that, among other things, each of

AllSystems, Alarmex / Vigilon, and Christofferson wrongfully and unjustifiably betrayed

Monitronics' trust, using fraud, deception and trickery in wrongfully soliciting Customers.

159.    The willful breach of the covenant of good faith and fair dealing by each of

AllSystems, Alarmex / Vigilon, and Christofferson has caused Monitronics to suffer injury and

damage in an amount to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Monitronics International, Inc. prays for judgment as follows:

1.    For a Temporary Restraining Order, Preliminary Injunction and permanent order

of this Court restraining and enjoining Defendants as follows:

a.    That Pinnacle, or any of the other Defendants, may not use the Monitronics'
Marks in any manner whatsoever.

b.    That Pinnacle, or any of the other Defendants, may not approach or solicit any
Customer at any time.

c.    That Pinnacle, or any of the other Defendants, may not use the Monitronics'
Confidential Information in any manner whatsoever.

d.    That Defendants return or destroy any and all Monitronics' Confidential
Information, including without limitation all originals, copies, translations, notes,
or any other form of said material.

e.    That Pinnacle, or any of the other Defendants, may not call, contact, or otherwise
approach any Monitronics' employees without the written consent of
Monitronics.

2.      For a permanent order of this Court declaring that any Customer AMA, executed by a Customer as a result of Defendants' wrongful conduct, is voidable at the option of the Customer;

3.      For monetary damages no less than $75,000, in the precise amount to be proven at trial;

4.      For pre- and post-judgment interest at the maximum rate allowed by law or by contract;

5.      For exemplary damages for the sake of example and by way of punishing Defendants, in an amount to be proven at trial;

6.      For treble the amount of any damages as described above in the Second Cause of Action under 15 U.S.C. §1125(a), the precise amount to be proven at trial;

7.      For double the amount of any damages as described above in the Sixth Cause of Action under Utah Code Ann. § 13-24-1 *et seq*., the precise amount to be proven at trial;

8.      For reasonable attorneys' fees and costs as allowed by law or by contract; and

9.      For such other relief as the Court deems just and equitable.

DATED this 8th day of August, 2007.

/s/  Jason W. Hardin
Peter W. Billings
Jason W. Hardin
Timothy K. Clark
FABIAN & CLENDENIN,
  A Professional Corporation
Attorneys for Monitronics International, Inc.

Plaintiff's Address:

Monitronics International, Inc.
2350 Valley View, Suite 100
Dallas, Texas 75234-5736

ND: 4814-2632-7809, Ver 2